The State of Ohio, Appellee, *v.* Stone, Appellant.

(No. 552—Decided October 12, 1971.)

*Mr. David Cutright* and *Mr. Richard Ward,* for appellee.

*Mr. Howard P. Lowe,* for appellant.

Gray, J. This cause is in this court on appeal from a judgment of the Court of Common Pleas of Ross County upon a verdict of a jury finding defendant guilty of procuring for a female person and the defendant feeling aggrieved thereby filed his notice of appeal and assigned the following errors.

"First assignment of error: The court erred in sustaining a prosecution objection thereby limiting the defendant-appellant's right to impeach the testimony of the chief witness for the prosecution on cross examination.

"Second assignment of error: The court erred in overruling defendant-appellant's motion for a mistrial when prejudicial heresay evidence was put before the jury.

"Third assignment of error: The court erred in overruling the motion to dismiss made by the defendant-appellant at the conclusion of the prosecution's case.

"Fourth assignment of error: The court erred in overruling the motion to dismiss made by the defendant-appellant at the conclusion of the defense case.

"Fifth assignment of error: The court erred in its charge to the jury by instructing the jury on issues not raised by the indictment."

Defendant met Patricia Larkin in a bar on South High Street in Columbus where she worked as a bar girl. Defendant asked her if she wanted to earn more money. She thought it over and said yes. She was given the job of answering a telephone for several days in an apartment provided by defendant which was located in Columbus. Defendant then asked her if she would engage in prostitution. She agreed. The agreement was that she was to charge twenty to twenty-five dollars for her services for entertaining each man. On one day early in her career she went to bed with six men for which she collected one hundred dollars. Defendant and Patricia were to split her earnings fifty-fifty. When it came to splitting her first earnings he took eighty dollars and she received twenty. The difference went to him "for rent."

Patricia testified that on February 13, 1969 defendant requested that she go to the Holiday Inn at Chillicothe, Ohio and engage in prostitution with men he would procure. She arrived at the Holiday Inn and registered as "Miss Sheets." She wrote the license number of defendant's 1966 Cadillac on the registration card. She engaged in prostitution three times that evening and received seventy dollars of which defendant took fifty.

After the third act of prostitution there was a knock on the door and two men entered. After some bargaining on the price, an agreement was reached. Patricia disrobed and was then placed under arrest by Sergeant Harris and Patrolman Augg of the Chillicothe Police Department.

The record shows that Patrolman Robert Detty of the Chillicothe Police Department was attending a gathering honoring the various police officers of that area at the Holiday Inn on that night. Defendant approached Detty who related the following conversation with defendant.

"Q. Would you tell the court please what you saw and observed and heard?

"A. Upstairs unit, like a suite, two rooms divided by a hallway and bath. Mr. Stone approached me. Asked me if Sergeant Harris was working. I told him no. I asked him why. Because I have a girl downstairs. I don't want any trouble.

"Q. If you can repeat that. I'm having difficulty hearing you. I don't know if they can hear over there. If you will raise your voice.

"A. Mr. Stone asked me if Sergeant Harris was working and I said no, and I asked him why. He said he had a girl downstairs and he didn't want any trouble. I asked him who and he gave me the first name of Pat and at that time he left.

"Q. Did you see the defendant John Stone any later that evening?

"A. Yes, sir, a short time later."

When Patricia was taken to the police station and booked defendant provided bail for her.

We now come to consider the first assignment of error. We do not believe that it is well taken. The right of contradiction is ordinarily limited to matters material to the issue, and does not extend to collateral matters. Defendant attempted to cross-examine Patricia on the question as to whether her husband had ever been arrested. The court refused to permit the introduction of this type of evidence. Patricia's husband was not a witness in the case.

The test to be applied in this instance is whether the fact shown by the answer could be shown in evidence for any independent purpose, or whether the cross-examiner would be allowed on his part to prove the matter. If so, then the matter may be contradicted.

In presenting his second assignment of error defendant urges that the court committed prejudicial error in permitting Sergeant Harris to testify concerning the activities of Linda Waple at the Holiday Inn. We believe that the admission of this evidence was proper under R. C. 2945.-59. Such is not hearsay evidence.

We will consider the third and fourth assignment of error together. We are of the view that they are not well taken. We have heretofore set forth the evidence surrounding the activities of defendant and Patricia. We believe that the evidence sustains the verdict of the jury.

In *State* v. *DeHass*, 10 Ohio St. 2d 230, 231, Judge Zimmerman, speaking for the court, said:

"In either a criminal or civil case the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. By the verdict rendered herein, it is apparent that the jury believed the testimony of the prosecuting witness and the corroborating evidence presented by the state, and an examination of the bill of exceptions demonstrates that such evidence was sufficient to support the verdict of guilty, as returned by the jury, and the judgment of the trial court."

The second paragraph of the syllabus states: "A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court, where the record shows that a verdict of guilty was returned by a jury on sufficient evidence and where no prejudicial error occurred in the actual trial of the case or in the instructions given the jury by the court."

If defendant was prejudiced by anything contained in the general charge of the court to the jury, he waived it. The record shows the following dialogue between the trial court and counsel for the prosecution and counsel for the defense at the conclusion of the court's charge.

"Do counsel for the state have anything they would like to add?

"Mr. Ward: We have nothing, your Honor.

"Court: Does counsel for the defendant have anything?

"Mr. Gareff: Nothing, Your Honor."

The gist of defendant's claim in the fifth assignment of error is that the trial court charged on issues not raised in the indictment, *i. e.*, that the indictment did not charge defendant with placing Patricia Larkin in the Holiday Inn.

An inspection of the Bill of Exceptions reveals that

defendant stated to Patrolman Robert Detty that he had a girl named Pat downstairs in the Holiday Inn and that defendant did not want to have any trouble with Sergeant Harris. This evidence went into the record without objection. The court charged on it. This was not prejudicial error. Defendant did not preserve his question in the first place. In the second place, defendant was found guilty only of the charge as laid in the indictment. The charge in the indictment was plain and clear and the evidence sustained the charge. From the record, it is plain that the jury was not confused as it did not ask for clarification or further instructions.

Any problem that might have arisen by the giving of that part of the charge which was not predicated upon the offense as described in the indictment inured to the benefit of the defendant as it required more proof than was necessary to sustain the allegations of the indictment and, thus, could only prejudice the state. It is, then, clear that defendant was not prejudiced and, hence this cannot be the basis for granting a new trial. See opinion of Judge O'Neill (now Chief Justice) in *State* v. *Porter,* 14 Ohio St. 2d 10.

In *Killian* v. *United States* (1961), 368 U. S. 231, at page 258 the Supreme Court said:

"We agree that the third paragraph appears inconsistent with the first. However, it is evident that the erroneous third paragraph could not have prejudiced petitioner for it, though inconsistent with the correct first paragraph, exacted a higher standard of proof of affiliation than the law required."

Judge O'Neill, in *Snyder* v. *Stanford,* 15 Ohio St. 2d 31, at page 41 quoting from the *Porter* case, said:

"If the general charge, considered as a whole, is not prejudicial to the objecting party, no reversible error results from a misstatement or ambiguity in a portion thereof. See *Centrello* v. *Basky, supra; Flynn* v. *Sharon Steel Corp.* (1943), 142 Ohio St. 145, 50 N. E. 2d 319; *State* v. *Huffman* (1936), 131 Ohio St. 27, 1 N. E. 2d 313; *Ochsner* v. *Cincinnati Traction Co.* (1923), 107 Ohio St. 33, 140 N. E. 644; *Campbell* v. *Koerner* (App. 1935), 20 Ohio Law Abs.

441; *Cincinnati Traction Co.* v. *Dannenfelser* (1914), 3 Ohio App. 220, 20 C. C. (N. S.) 553.''

That portion of the charge which defendant claims prejudiced his constitutional rights did not in fact prejudice him, but in truth inured to his benefit and, therefore, reversal of his conviction cannot be predicated on this alleged defect in the charge. See *State* v. *Hashmall,* 160 Ohio St. 565.

Judge Stephenson, in his dissent, advances another proposition for reversing the judgment of the trial court, which the majority of this court does not find persuasive. His first claim is that the indictment does not state an offense. At the outset, it should be emphasized that defendant has not in any manner raised this question so we do not know whether or not he will adopt the position of our dissenting colleague. Suffice it to say defendant cannot now claim that he was misled or even prejudiced by something of which he was not aware.

R. C. 2905.18 provides as follows:

''No person shall receive any money or other valuable thing for procuring for, or placing in, a house of prostitution or elsewhere, any female for the purpose of causing her to cohabit with any male person.

''Whoever violates this section shall be fined not more than one thousand dollars and imprisoned not less than three nor more than ten years.''

''The indictment, with the omission of formal parts, provides as follows:

''John Stone on the 13th day of February in the year of our Lord one thousand nine hundred sixty nine, at the County of Ross aforesaid, did unlawfully receive money or other valuable thing for procuring for any female, to-wit: Patricia Larkin for the purpose of causing her to cohabit with any male person.''

By comparing the two, we find that the indictment was laid in terms of the statute. R. C. 2941.05 is as follows:

''In an indictment or information charging an offense, each count shall contain, and is sufficient if it contains in substance, a statement that the accused has committed

some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the section of the Revised Code describing the offense or declaring the matter charged to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is charged.''

Three methods of testing the sufficiency of an indictment are set forth therein. (1) An indictment is sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary concise language. (2) The indictment may be in the words of the section of the Revised Code describing the offense, or (3) in any words sufficient to give the accused notice of the offense with which he is charged.

The grand jury in defining the charge elected method number two, and, having followed the procedure prescribed by the Revised Code of Ohio, it is not necessary to seek a construction based upon federal law as the language contained in R. C. 2941.05 is plain, concise and unambiguous in its directives. This being the situation, the language of the indictment met the requirements, also, of numbers 1 and 3 set forth above.

Our colleague makes this statement in his dissent: ''Procuring of customers for a prostitute is not proscribed by statute.'' Procuring of customers for a prostitute is proscribed by statute *when it is done for the purpose of receiving money or anything of value.* This is the offense for which defendant was indicted, tried and convicted.

R. C. 2941.08 states, in part, as follows:

''An indictment or information is not made invalid, and the trial, judgment, or other proceeding stayed, arrested, or affected * * *

''(K) For other defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits.''

Our position is that there are no defects in the indictment. However, we wish to make the point that the sub-

stantial rights of the defendant upon the merits could not have been prejudiced when he has not raised the point first raised on appeal by our dissenting colleague.

*State* v. *Yudick,* 155 Ohio St. 269, at pages 276 and 277 states:

"The record discloses that the accused did not request a bill of particulars. It is contended by his counsel that because of details set forth in the indictment an application for a bill of particulars would have been futile. A plea of not guilty by the accused having been entered, the case is governed by the decision of this court in *State* v. *Hutton,* 132 Ohio St., 461, 9 N. E. (2d), 295. The following language in the opinion thereof is pertinent:

" 'Therefore, if the defendant felt that the affidavit was not sufficiently definite to inform him as to the charge preferred against him, it was his privilege and duty to seasonably request of the prosecutor or the court a bill of particulars setting up more specifically the nature of the offense charged. This he failed to do. Hence the lower courts were correct in holding that the matter was waived when the defendant proceeded to trial.' "

In any and all events the terms of the statute relating to prostitution so distinctively individuates the offense which it defines that use of such terms charging such offense in the indictment was sufficiently specific to put defendant on notice of the offense with which he was charged. Compare *United States* v. *Williams* (C. C. A. 5), 202 F. 2d 712; *Harris* v. *United States* (C. C. A. 10), 190 F. 2d 503.

Where the sufficiency of the indictment is not raised upon trial, the indictment must be held sufficient unless so defective that it does not by any reasonable construction, charge the offense for which defendant was convicted. *Lucas* v. *United States* (C. C. A. 4), 158 F. 2d 865, cert. denied 330 U. S. 841, rehearing denied 331 U. S. 863; *Pifer* v *United States* (C. C. A. 4), 158 F. 2d 867.

We find no prejudicial error among those assigned and argued, and, therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

ABELE, P. J., concurs.

STEPHENSON, J., dissenting. What offense was charged in the indictment in this case? It is the state's assertion that the indictment is drawn under and alleges a violation of R. C. 2905.18 which section provides, omitting the penalty, the following:

"No person shall receive any money or other valuable thing for procuring for, or placing in, a house of prostitution or elsewhere, any female for the purpose of causing her to cohabit with any male person."

R. C. 2905.18 was formerly G. C. 13031-3, which provided, again omitting the penalty, the following:

"Any person who shall receive any money or other valuable thing for, or on account of, procuring for, or placing in, a house of prostitution or elsewhere, any female for the purpose of causing her to cohabit with any male person or persons, shall be guilty of a felony * * *."

The legislature has provided by R. C. 1.24 that it was not intended by adoption of the provisions of the Revised Code to change the law as heretofore expressed in the General Code, hence, reference to the former section is proper. See *State* v. *Kotapish,* 171 Ohio St. 349.

In the leading and oft cited case of *Boykin* v. *United States* (D. C. Cir.), 130 F. 2d 416, the United States Court of Appeals for the District of Columbia carefully and logically analysed an enactment of Congress which was, except for the omission of commas and the difference in the penalty, identical with G. C. 13031-3.

The indictment in *Boykin* charged (in two counts upon which the defendant was convicted) defendant with the receiving of money on account of a "placing" by the defendant of his daughter to cohabit with divers male persons. The pivotal question was whether the gist of the offense was the "placing" or receiving of money. The court held that since there was only one placement, there was only one violation irrespective of how many times money was received.

In its analysis of the statute, the court concluded at page 419 that the following elements were necessary to be charged and proven for a conviction: "(1) an act of procurring a woman for or placing her; (2) in a house of pros-

titution or elsewhere; (3) for the purpose of causing her to cohabit illegally with a male person or persons; (4) that the defendant received money or other valuable thing; (5) for or on account of the procuring or placing.''

The court, on the same page, further stated in analysing the statute:

''The central fact in the statutory structure is, therefore, the act of placing or procuring a woman for the purpose prohibited. Without this, the section does not proscribe the taking of money for causing or aiding to cause illegal cohabitation. It does not punish merely procuring patrons for a woman, or sharing her ''earnings,'' or ''keeping'' or ''maintaining'' her, even with intent to cause her to cohabit illegally. In other words, it does not penalize brothel keepers as such, or agents who procure patrons for brothels or for women who carry on ''the oldest profession'' elsewhere, so long as they do nothing toward bringing the woman there, for that purpose, and for money or value received. The essential evil is procuring women for houses of prostitution and for similar purposes elsewhere for pay.''

Did the indictment herein charge an offense in light of the above principle? The indictment returned against the defendant provides, with omission of the strictly formal parts, the following:

''John Stone * * * on the 13th day of February in the Year of our Lord one thousand nine hundred and sixty-nine, at the County of Ross aforesaid, did unlawfully receive money or other valuable thing for procuring for any female, to-wit: Patricia Larkin, for the purpose of causing her to cohabit with any male person.''

Giving the indictment a reasonable interpretation, it appears to charge the appellant with the offense of receiving money or other valuable thing for procuring *for* Patricia Larkin male persons for the purpose of causing her to illicitly cohabit with such persons. If this is in fact what the indictment charges, regardless of what was intended, it does not allege a violation under the statute. Procuring of customers for a prostitute is not proscribed by the statute.

The defendant has not assigned the sufficiency of the

indictment as error, however, this court possesses authority to consider any error it finds even though not assigned by counsel. It is unnecessary, however, to determine if the indictment is fatally defective in that it fails to charge an offense for the reason that, in my view, the case must be reversed under the fifth assignment of error.

The fifth assignment of error is as follows:

"The Court erred in its charge to the jury by instructing the jury on issues not raised by the indictment."

My colleagues conclude that any error in the charge was waived. The record reflects no objection entered or exception taken to the charge. The correctness of this conclusion is dependent upon whether the alleged error was one of omission or commission.

R. C. 2321.03 provides, in part:

"Error can be predicated upon erroneous statements contained in the charge, not induced by the complaining party, without exception being taken to the charge."

The principle was applied in *State* v. *Lynn,* 5 Ohio St. 2d 106, the fourth paragraph of the syllabus providing:

"Where there are errors of commission in the charge of a court, not induced by the complaining party, a failure to object thereto does not constitute a waiver of the error and such error may be relied upon in an appeal of such case. (*Rosenberry et al., Admrs.,* v. *Chumney,* 171 Ohio St. 48, followed.)"

The decisive question, therefore, under this assignment of error, is whether there were errors of commission, prejudicial in nature, in the charge in the court below. My conclusion is in the affirmative.

An examination of R. C. 2905.18 reveals that the conduct proscribed is in the disjunctive. The statute may be violated by receiving money for *procuring for* a house of prostitution or elsewhere any female for illicit cohabitation with a male person, or the statute may be violated by receiving money for *placing in* a house of prostitution or elsewhere any female for illicit cohabitation with a male person. The indictment here, assuming it charges an offense, is for procuring and does not allege a "placing" violation.

The Court in its charge, in an early portion, read the indictment. Subsequently, the following was given.

"Now the indictment in this case is founded on Section 2905.18 of the Revised Code. This Revised Code reads as follows: "No person shall receive any money or other valuable thing for procuring for, or placing in, a house of prostitution or elsewhere, any female for the purpose of causing her to cohabit with any male person.

"Now the indictment charges the defendant with procuring and in the event of procuring, there are several material elements of the crime which the States must prove beyond a reasonable doubt before it is entitled to a conviction.

"* * *.

"Three, the State must prove beyond a reasonable doubt that the defendant, John Stone, placed the said Patricia Larkin in a motel, specifically the Holiday Inn located in Chillicothe, Ohio.

"Four, the State must prove beyond a reasonable doubt that the defendant, John Stone, placed the said Patricia Larkin in the Holiday Inn Motel for the purpose of causing her to cohabit with one or more male persons.

"Five, the State must prove beyond a reasonable doubt that the defendant, John Stone, received money or other valuable thing, for or on account, of placing the said Patricia Larkin in the Holiday Inn Motel.

"In furthering expiration of the offense charged in the indictment, there must be established the act of placing the said Patricia Larkin in the Holiday Inn Motel by the defendant, and it must further be established that the defendant placed the said Patricia Larkin in the motel for the purpose of causing Patricia Larkin to cohabit with one or more male persons. * * *."

It is evident that the court submitted the case to the jury upon a manner of commission of the offense, to-wit, "placing" provided for in the statute but not upon the manner, to-wit, "procuring" which the prosecution alleged in the indictment.

The section heading of R. C. 2905.18 is "Procuring." I am not persuaded, however, that it can with logic, be ar-

gued that such heading may be used as a definition of the offense and that use of the term "procuring for" in the indictment charged both a "procuring for" and a "placing in." The reason is that, by virtue of R. C. 1.01, section headings do not consitute any part of the law as contained in the Revised Code.

The charge here could be proper only if the legislature intended the term "procure for" to be identical in meaning to "place in." In construing statutes, the Ohio Supreme Court in *Turley* v. *Turley*, 11 Ohio St. 173 at 179 stated:

"The presumption always is, that every word in a statute is designed to have *some* effect, and hence the rule that, "in putting a construction upon any statute, every part shall be regarded, and it shall be so expounded, if practicable, as to give some effect to *every part of it.*"

If the legislature intended the same meaning, what purpose was there in the inclusion of both terms in the statute? In my view, the terms do not have the same meaning in ordinary significance or legal usage.

The term "procure" has been defined as meaning: "assisting, inducing, persuading or encouraging a female person to become an inmate of a house of prostitution." *People* v. *Schultz*, 238 Cal. App. 2d 804, 48 Cal. Rep. 328. An Ohio court has defined "procure" to mean "to obtain for illicit intercourse or prostitution." *State* v. *Miller*, 88 Ohio Law Abs. 533, 537.

In *State* v. *Basden*, 31 Wash. 2d 63, 196 P. 2d 308, the following definitions were adopted, at page 73, with respect to the "placing" of a female in a house of prostitution:

"Webster's New International Dictionary (2d ed.), defines the verb "place" as follows:

"To put or set in a particular rank, office, position, or condition of life; to secure a position, office, or the like, for; as, in whatever sphere one is *placed.*"

The Oxford English Dictionary (1933) contains several definitions of the verb "place." Under 2b is found the following:

"To find a place or situation for; to arrange for the employment, living, or marriage of; to settle * * *."

Used in connection with a human being, these definitions are clearly comprehensive and adequate."

In *Bandy v. State,* 102 Ohio St. 384, the following is stated at 386 and 387:

"The charge of the court to the jury should naturally and necessarily include a simple and orderly statement of the issues of fact and the rules of law applicable thereto and helpful to the jury in the determination of those several issues of fact, upon which their verdict is to be based.

But, what are the issues of fact with which the jury are to deal in the case at bar, and from whence do they arise?

In civil cases, the issues of fact tried by the jury arise out of the pleadings. This is a sound and salutary rule.

The principle is that all parties in such cases should be advised in advance as to the issues thereof, and that, thereafter, unless amended, the evidence must be confined to the issues so raised.

But, in criminal cases, the rule is naturally and necessarily different from that in civil cases.

The indictment, information, or affidavit in a criminal prosecution, necessarily confines the state to the charge made against the defendant, in order that the defendant shall know, as the constitution provides, the nature of the accusation against him."

Hence, an accused in a criminal case is entitled to a charge which correctly separates and defines the issues under the indictment as drawn and any other issues that a jury must consider and give proper instructions in regard to each. See 4 Ohio Jurisprudence 2d 236, Appellate Review, Section 981.

The accused here did not receive such a charge and was prejudiced thereby.

The defect in the charge here was not one simply of omission with the charge being correct so far as it went. It required jury consideration of non-existent issues to determine guilt while omitting any finding upon the necessary issue of procuring. Nowhere in the charge is the requirement of a jury finding of "procuring" set forth or a definition of the same given,

I would reverse.