[Cite as *Toledo v. Ebraheim*, 2015-Ohio-4055.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                    Court of Appeals No. L-14-1157

        Appellee                                          Trial Court No. CRB-13-20594

v.

Nabil A. Ebraheim                                        **DECISION AND JUDGMENT**

        Appellant                                         Decided:  September 30, 2015

* * * * *

David Toska, City of Toledo Chief Prosecutor, and
Henry Schaefer, Assistant Prosecutor, for appellee.

Jerome Phillips and Peter J. McHugh for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Toledo Municipal Court, following a bench trial, in which appellant, Nabil A. Ebraheim, was found guilty of one count of vehicular manslaughter.  The relevant, undisputed facts are as follows.

{¶ 2} On August 30, 2013, at approximately 6:30 a.m., a Mercedes Benz E350 driven by appellant entered the intersection of Richards and Dorr Streets in Toledo, Ohio, where it was struck by a 2008 Harley-Davidson motorcycle driven by Lawrence Hilton. At the time of the accident, appellant was driving southbound on Richards Street, and Hilton was driving eastbound on Dorr Street. Traffic on Richards was controlled by a flashing red light, and traffic on Dorr Street was controlled by a flashing yellow light. As a result of the impact, appellant's vehicle was rotated 180 degrees. Hilton was ejected from the motorcycle and sustained extensive head and bodily injuries. He was taken to Toledo Hospital, where he died the next day. The accident was investigated and, on December 4, 2013, appellant was charged with one count of vehicular manslaughter in violation of R.C. 2903.06(A)(4), a second degree misdemeanor.

{¶ 3} On May 7, 2014, the city filed a trial brief, in which the city cited R.C. 2903.06(A)(4) and asserted that, as a predicate offense, appellant failed to: (1) stop at the direction of a traffic control device, i.e., the flashing red light, in violation of R.C. 4511.12, and (2) properly proceed after stopping at a flashing red light, in violation of R.C. 4511.13 and 4511.43. After recounting the conflicting evidence to be presented at trial as to the speed of Hilton's motorcycle, the city argued that, even if the motorcycle was "travelling at an excessive speed," appellant still had a duty as a reasonable, prudent driver, to take notice of the motorcycle and anticipate the dangers of proceeding into the intersection.

2.

{¶ 4} A bench trial was held in Toledo Municipal Court on June 26, 2014. Testimony was presented on behalf of the city by Bridgette and Robert Maher, and Toledo Police Officer Jeffrey Scott.

{¶ 5} Bridgette Maher testified that she was driving behind Hilton on Dorr Street before the accident. She said that it was still dark, however, the road was dry and no fog was present. She stated that, before reaching the intersection, she and her husband, Robert, noticed that Hilton was wearing a helmet. Bridgette also stated that appellant did not come to a complete stop at the intersection of Richards and Dorr. On cross-examination, Bridgette testified that appellant's vehicle was going "quite fast" as it entered the intersection, and that the impact with the motorcycle caused appellant's car to spin around.

{¶ 6} Robert Maher testified that he was in the car with his wife, and that he first saw Hilton prior to the accident, at the intersection of Dorr and Reynolds Road. Robert said he could tell that Hilton was an experienced motorcycle driver, and that Hilton appeared to be going approximately 40 or 45 m.p.h. as he entered the intersection at Dorr and Richards. Robert also said that he saw appellant's vehicle accelerate as it entered the intersection. On cross-examination, Robert testified that he saw Hilton change lanes just before the accident, and he thought that appellant did a "rolling stop" at the flashing red light before accelerating into the intersection.

{¶ 7} Toledo Police Officer Jeffrey Scott testified that he arrived at the intersection of Dorr and Richards shortly after the accident occurred. Scott said there

3.

was an accident reconstructionist on the scene when he arrived, and that the scene was photographed and paint markings were made to aid in an accident reconstruction. Scott testified that appellant told him he did not see Hilton's motorcycle until he was already in the intersection. Scott further testified that visibility was approximately 1,000 feet in either direction, except for some "patchy fog" around nearby Sleepy Hollow pond, and the view was unobstructed except for a pole that may have briefly impeded appellant's view of the motorcycle.

{¶ 8} On cross-examination, Scott testified that lights from other vehicles may have affected appellant's ability to see a motorcycle. He stated that appellant's car spun around as a result of the off-center impact, and he estimated appellant's speed at 23 m.p.h. at the time of impact. Scott opined, based on his observations and calculations, that the motorcycle's speed was around 50 m.p.h. as it entered the intersection, and Hilton applied only the rear brakes which locked up, causing the motorcycle to create a 101-foot skid mark.

{¶ 9} At the close of Scott's testimony the city rested, and the defense presented testimony by Toledo Police Sergeant Tyson Coates, Toledo Police Officer George Roush, Dr. Steven Kramer, and Frederick Greive. Sergeant Coates testified that he is an accident reconstructionist. Coates stated that the best way to stop a motorcycle is to lock the rear brake and simultaneously "modulate" the front brake however "novice" motorcycle drivers do not usually use both the front and rear brakes in an emergency. On cross-examination, Coates stated that he assisted Scott in his investigation by participating in a

4.

reenactment of the accident, in which he used his own motorcycle to simulate the conditions faced by Hilton. Coates said that, because his motorcycle has an automatic braking system, he had to turn off his rear brakes and use only his front brakes during the simulation. On redirect, Coates stated that he was not aware of Hilton's skill level as a motorcycle rider. He also stated that his own bike weighs over 1000 pounds, while Hilton's bike was 700 pounds.

{¶ 10} Officer Roush testified that he arrived at the scene of the accident at 6:40 a.m., and there was no fog present at that time. Roush stated that he measured the skid mark at 106 feet, and made some paint marks on the pavement to assist in the accident reconstruction. Roush opined that, if Hilton had used both his front and rear brakes, the accident would not have happened. He further opined based on his own investigation that, if Hilton used only his rear brakes, his speed would have been between 50 and 52 m.p.h. as he entered the intersection. He noted a change in the direction of the last two feet of the skid, which he attributed to the impact with appellant's vehicle. On cross-examination, Roush stated that the "fog" observed at the accident scene could have been caused by police flares. On redirect, he testified that he believed Hilton was 222 feet from the point of impact when he perceived the danger, and he skidded for approximately four seconds before hitting appellant's Mercedes. However, he conceded that there could be errors in his calculations.

{¶ 11} Kramer, a professor of mechanical engineering at the University of Toledo, testified that he reviewed Scott's, Roush's, and Coates' expert reports in preparation for

5.

his testimony. Based on those reports, Kramer outlined four possible scenarios: (1) Hilton locked his front brakes and did not use his rear brakes, (2) Hilton did not use his front brakes but did lock his rear brakes, (3) Hilton hit the front brakes "hard" and also locked his rear brakes, and (4) Hilton locked both his front and rear brakes. Of those four possibilities, Kramer stated that, in his opinion, third option was the most plausible. Kramer also stated that a four-second skid would have produced a mark on the pavement that was over 270 feet long. He opined that the motorcycle's speed was 65.9 m.p.h. as it entered the intersection. He also stated that the motorcycle would have to be going at least 49 m.p.h. at impact to rotate appellant's vehicle 180 degrees, in contrast to Scott's conclusion that the motorcycle's speed decreased from 50 m.p.h. to 45.13 m.p.h., and Roush's calculation that the decrease in speed was from 52 m.p.h. down to 40 m.p.h.

{¶ 12} On cross-examination, Kramer testified that Hilton's body made contact with appellant's vehicle after he was thrown from the motorcycle. He also testified that Hilton, an experienced rider, must have used both his front and rear brakes and that, in his opinion, Hilton was approximately 376 feet from the intersection when he first perceived the danger.

{¶ 13} Grieve, a traffic crash reconstructionist, testified that he performed his own independent investigation of the accident. He stated that Scott's and Roush's estimates "just don't add up," and opined that the motorcycle was going between 68 and 72 m.p.h. when the brakes were first applied, and 60 m.p.h. at the point of impact. He also stated that Hilton hit the motorcycle's windshield and handlebars, as well as the "C pillar" of

6.

appellant's vehicle, and the fact that the vehicle's axle was bent indicates that the motorcycle was going at a high rate of speed at the time of impact. He concluded that there would have been no accident if the motorcycle's speed had been less than 50 m.p.h. On cross-examination, he further stated that the accident would not have happened if appellant had waited for the motorcycle to go by before entering the intersection.

{¶ 14} At that point, the defense rested, and rebuttal testimony was presented by Toledo Police Officer Dennis Cole. Cole testified that he assisted Coates in reconstructing the accident. He agreed with Roush's conclusion that the motorcycle was traveling at 47 m.p.h. at the point of impact. He stated that using the front brakes is an "acquired skill" that even experienced riders must practice to perform correctly. He also stated that appellant's line of sight down Dorr Street from the stop line at the intersection would have been 500 feet. He agreed with Scott's statement that, past the stop line, there was only a pole that might have briefly blocked appellant's view. He calculated that Hilton was going 47 m.p.h. at the start of the skid, it took him two seconds to see appellant and lock his brakes, and 1.71 seconds from that time until the impact. He also calculated that, if the Mercedes stopped at the stop bar, it would have traveled 76 feet from there to the point of impact. Cole acknowledged that, at 22 m.p.h. the distance would have been covered in four seconds, creating a quarter-second discrepancy in the two time lines.

{¶ 15} On cross-examination, Cole testified that the type of damage to the motorcycle indicates a 40 to 45 m.p.h. speed at braking, and a 33 m.p.h. speed at impact.

7.

Cole further testified that it was "impossible" for the skid to last for four seconds, as Roush calculated, and all police calculations were made on the assumption that Hilton applied only his rear brakes.

{¶ 16} At the conclusion of Cole's testimony, closing arguments were made by counsel for the city and the defense. During his closing argument, the prosecutor stated that, pursuant to R.C. 4511.13, vehicular traffic is required to stop at a stop line if there is a flashing red signal at an intersection. Then, pursuant to R.C. 4511.43, after having stopped, the vehicle must yield the right of way to any vehicle that is either in the intersection, or so close that entering the intersection would cause a hazard. The prosecutor also stated that appellant had the burden at trial to overcome the presumption that Hilton had the right of way.

{¶ 17} In his closing argument, defense counsel stated that, pursuant to R.C. 2903.06, proximate cause is an issue in determining whether appellant is guilty of vehicular homicide. Specifically, counsel argued that evidence was presented to show that Hilton was not "lawfully" in the intersection because he was speeding therefore his actions proximately caused the accident. Defense counsel stated that it was dark and foggy when the accident occurred. In addition, defense counsel argued that, although the complaint stated that appellant failed to yield the right of way as a predicate offense under R.C. 2903.06, the city presented evidence at trial that appellant failed to completely stop at the stop line, which is a different predicate offense.

{¶ 18} In rebuttal, the city argued that competing evidence was presented as to the speed of the motorcycle, and whether only the rear brakes were applied. The prosecutor also argued that the Bridgette and Robert Maher testified that Hilton was not driving in an unsafe manner, nor was he speeding before the accident and that, although it was still dark, the road conditions were generally good and there was no fog at the time. The prosecutor concluded by saying that, regardless of Hilton's speed, appellant was able to see Hilton and he should not have proceeded into the intersection.

{¶ 19} After the parties' arguments the trial court found, after reviewing the trial testimony and exhibits, as well as the experts' reports and applicable case law, that: (1) appellant did not see Hilton's motorcycle before he entered the intersection, (2) no clear evidence was presented to establish that appellant did not come to a complete stop at the flashing red light, (3) testimony that the motorcycle was going as fast as 65 m.p.h. was not credible, and (4) Hilton's speed was not unreasonable for the road conditions at the time. Based on those conclusions, the trial court found that "a reasonable, ordinary, prudent person in [appellant's] position would have been able to see that motorcycle and yield to that motorcycle." Accordingly, the trial court found appellant guilty of vehicular manslaughter "beyond a reasonable doubt."

{¶ 20} After hearing victim impact statements from Hilton's widow, children and sister-in-law, and a statement by defense counsel as to appellant's remorse, the trial court stated that, despite the devastating effect the accident had on Hilton's family and friends, "this was an accident. There was no intentional conduct." In addition, the trial court

9.

noted that appellant had "a number of other [traffic] violations," however, they were all minor misdemeanors. Accordingly, the trial court sentenced appellant to "90 days, all of which will be suspended, $750 fine and costs * * * [and a] One-year license suspension with work privileges." In addition, the trial court placed appellant on one year of probation "on the condition of a victim impact panel attendance, as well as a defensive driving course."

{¶ 21} On June 30, 2014, appellant filed a motion to dismiss the complaint, in which he asserted that the charge against him was insufficient, because the complaint "did not reference the statute number or include each element of the predicate offense and therefore did not put the Defendant on notice of the charge against him." In support, appellant cited R.C. 2903.06(A)(4), which states:

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:

* * *

(4) As the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor or of a municipal ordinance that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any

provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor.

{¶ 22} In support, appellant asserted that the following statement in the complaint was insufficient to establish a predicate offense pursuant to R.C. 2903.06(A)(4): "The defendant stated he stopped for a flashing red light at the intersection of Dorr and Richards, but failed to yield the right of way to the motorcycle on Door St. [sic.]"

{¶ 23} On July 8, 2014, the city of Toledo filed a response in opposition to the motion to dismiss. On July 18, 2014, the trial court denied the motion to dismiss finding that it was filed after trial. The trial court also noted that, in its trial brief, the city cited R.C. 2903.06(A)(4), the vehicular manslaughter statute, and also R.C. 4511.13(F)(1), which governs "flashing red traffic control devices." Accordingly, the trial court concluded that appellant had sufficient notice of "the essential elements and predicate offense for which he was tried."

{¶ 24} Appellant filed a notice of appeal from the judgment of conviction and the denial of his motion to dismiss on July 22, 2014, in which he sets forth the following two assignments of error:

1. The Trial Court erred by disregarding the fact that Appellant was not charged with a predicate offense required to obtain a conviction for Vehicular Manslaughter under O.R.C. 2903.06(A).

2. Appellant's conviction was based upon insufficient evidence and was against the manifest weight of the evidence.

11.

{¶ 25} In his first assignment of error, appellant asserts that the trial court erred when it denied his motion to dismiss the complaint. In support, appellant argues that he was never properly charged with vehicular manslaughter because the complaint did not either fully describe or cite to the statutory number of a predicate offense that was a minor misdemeanor, as required by R.C. 2903.06(A)(4). Accordingly, appellant concludes that the charging document did not contain "information sufficient to give him fair notice of the charge against him" and, on that basis, the complaint should have been dismissed. In support, appellant cites to *State v. Buehner*, 110 Ohio St.3d 403, 406, 2006-Ohio-4707, 853 N.E.2d 1162, in which the Ohio Supreme Court stated that an indictment is sufficient to provide constitutional notice to an accused if it "tracks the language of the charged offense and identifies a predicate offense by reference to the [applicable] state number." Appellant also argues that the criminal complaint in this case is "the functional equivalent of the Indictment * * *." We disagree with appellant's argument, for the following reasons.

{¶ 26} Ordinarily, the jurisdiction of a municipal court is initially invoked through the filing of a complaint. *Parma v. Mentch*, 8th Dist. Cuyahoga No. 101222, 2014-Ohio-5690, ¶ 9, citing *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 12. (Other citation omitted.) Ohio courts have held that a complaint differs from an indictment because:

A complaint is the basic charging instrument in all criminal proceedings in this state. State v. Wood, 48 Ohio App.2d 339, 343, 357

12.

N.E.2d 1106 (8th Dist.1976). It is a written statement of the essential facts constituting the offense charged and may be made by either a police officer or a private citizen having knowledge of the facts. Crim.R. 3; R.C. 2935.09. In contrast, an indictment is issued by the grand jury after twelve jurors have concurred on the charges. Ohio Const., Article I, Section 10; R.C. 2939.20. It specifies that the defendant has committed a public offense "in ordinary and concise language without technical averments or allegations not essential to be proved." Crim.R. 7(B). State v. Hess, 7th Dist. Jefferson No. 02 JE 36, 2003-Ohio-6721, ¶ 16.

{¶ 27} "The purpose of an indictment * * * or complaint is to inform the accused of the offense with which he is charged so that he may prepare for trial." *State v. Sottek*, 6th Dist. Lucas No. L-87-150, 1988 WL 28113 *2 (Mar.4, 1988), citing *State v.* Morris, 8 Ohio App.3d 12, 16, 455 N.E.2d 1352 (8th Dist.1982). "However, the requirements of a complaint are not as strictly construed as those for an indictment." *Id.*, citing *Toledo v. Tucker,* 99 Ohio App. 346, 347, 133 N.E.2d 411 (6th Dist.1954). In most instances, it is only when the complaint fails to state essential facts sufficient to inform a defendant of the offense with which he or she is charged that "reference to a numerical designation of the applicable ordinance becomes pivotal." *Id.*

13.

{¶ 28} Crim.R. 3 states:

The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. * * *

{¶ 29} A complaint satisfies the requirements of Crim.R. 3: "when all the elements constituting the offense charged are sufficiently set forth and nothing therein contained is ambiguous." * * * "A complaint is generally deemed to be sufficient if it charges an offense in the words of the statute or ordinance upon which it is based." * * * "While all the specific facts relied upon to sustain the charge need not be recited, the material elements of the crime must be stated." *Parma*, at ¶ 10 (Other citations omitted.)

{¶ 30} "In general, defects in a complaint must be objected to by motion prior to trial or the objection is deemed waived." *Sottek*, supra.; Crim.R. 12(B)(2). "When not raised at trial, the complaint must be so defective that under any reasonable construction it does not charge the offense for which the party was convicted." *Id.*, citing *State v. Stone*, 30 Ohio App.2d 49, 56, 283 N.E.2d 188 (4th Dist.1971). Appellate review of the sufficiency of a criminal complaint is de novo. *Parma*, ¶ 12.

{¶ 31} In this case, the complaint specifically charged appellant with vehicular manslaughter, in violation of R.C. 2903.06(A)(4). As for a predicate offense, the complaint stated that appellant "failed to yield the right of way" to Hilton's motorcycle.

14.

As set forth above, the city referenced a violation of R.C. 4511.13(F)(1) in its brief that was filed before trial. That statute states, in relevant part:

> (F) Flashing red signal indication:
>
> (1) Vehicular traffic, on an approach to an intersection, facing a flashing circular red signal indication, shall stop at a clearly marked stop line * * *; or * * * at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. *The right to proceed shall be subject to the provisions that are applicable after making a stop at a stop sign.*
>
> (Emphases added.)

{¶ 32} The statute referenced in R.C. 4511.13(F)(1) which governs a driver's response to a stop or yield sign is R.C. 4511.43(A). That statute states, in relevant part that, after stopping at a stop sign or clearly marked stop line, "the driver [of a vehicle] shall yield the right-of-way to any vehicle in the intersection or approaching on an other roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction or roadways."

{¶ 33} In addition to the city's citation of R.C. 4511.13(F)(1) in its trial brief, the record shows that, at trial, the prosecutor stated that the city was prepared to establish "beyond a reasonable doubt" that appellant failed to stop at the flashing red light and then proceed into the intersection with caution as required by R.C. 4511.43. Later, in his own opening remarks, defense counsel argued that Hilton forfeited the right-of-way as defined

15.

in R.C. 4511.01(UU) by "traveling at an unreasonable speed for the conditions then existing on the morning of the accident." Therefore, counsel argued, appellant "cannot be guilty of the underlying traffic offense and therefore cannot be guilty of the * * * vehicular manslaughter."

{¶ 34} On consideration of the entire record that was before the trial court, we cannot say that the complaint was so defective that under any reasonable construction it does not charge the offense for which the party was convicted, or that appellant did not receive adequate notice of the charges against him. Accordingly, the trial court did not err by denying appellant's motion to dismiss the complaint after trial, and appellant's first assignment of error is not well-taken.

{¶ 35} In his second assignment of error, appellant asserts that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. In support, appellant argues that the evidence presented at trial showed that the accident occurred because Hilton's motorcycle was traveling well above the posted speed limit. Appellant supports his argument by referring to Kramer's testimony that the motorcycle could have been traveling over 65 m.p.h. as it entered the intersection. Appellant also argues that Hilton's excessive speed is demonstrated by the length of the skid marks and the fact that appellant's vehicle was rotated 180 degrees by the impact. We will address appellant's sufficiency and manifest weight arguments separately.

16.

## Sufficiency of the Evidence

**{¶ 36}** Sufficiency of the evidence is a legal standard that tests whether the evidence submitted at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On appeal, the test is whether, when "viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Criminal convictions should not be overturned on the basis of insufficient evidence unless reasonable minds could not reach the same conclusion as the trier of fact. *State v. Smith*, 6th Dist. Lucas No. L-14-1119, 2015-Ohio-2676, ¶ 8.

**{¶ 37}** Appellant was convicted of vehicular manslaughter pursuant to R.C. 2903.06(A)(4), which states: "No person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is minor misdemeanor * * *." As discussed in our analysis of appellant's first assignment of error, the predicate offense of which appellant was found guilty is R.C. 4511.43(A), which requires the driver of a vehicle to yield the right-of-way to other vehicles that are either in an intersection or so close "as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction or roadways."

17.

**{¶ 38}** As set forth above, testimony was presented at trial that the collision between appellant and Hilton occurred when appellant stopped at a flashing red traffic signal before driving his vehicle in a southbound direction into the intersection of Richards and Dorr Streets, where it was struck by a motorcycle ridden by Hilton. It is undisputed that Hilton was driving eastbound on Dorr Street, and that a flashing yellow traffic signal controlled the traffic driving in that direction. As a result of the collision Hilton was thrown from the motorcycle and later died.

**{¶ 39}** On appeal, appellant argues at length that his conviction should be overturned because Hilton forfeited the right-of-way when he proceeded into the intersection in an "unlawful manner," i.e., at an unsafe rate of speed. In support, appellant relies on Kramer's and Greive's testimony that, "to a reasonable degree of scientific certainty," the motorcycle was going over 60 m.p.h. when Hilton first applied the brakes to avoid a collision. Accordingly, appellant asks this court to find that Hilton violated R.C. 4511.01(UU)(1), which defines the right-of-way as the right to proceed in a "lawful manner."

**{¶ 40}** By making the above argument, appellant focuses on the "causation" element of R.C. 2903.06(A)(4) by arguing that, but-for Hilton's excessive, unsafe speed, the accident would not have occurred. However, unless it is determined to be the *sole* proximate cause of an accident, contributory negligence of the decedent is not a defense to vehicular manslaughter. *State v. Dendak*, 5th Dist. Stark No. 2013 CA 00065, 2013-

18.

Ohio-5694, ¶ 14, relying on *State v. Langenkamp*, 137 Ohio App.3d 614, 621, 739 N.E.2d 404 (3d Dist.2000).

{¶ 41} In addition to the conflicting expert testimony regarding the speed of appellant's vehicle and the motorcycle, as well as Hilton's attempt to apply his brakes, Bridgette Maher testified that appellant stopped at the flashing red light and then proceeded into the intersection. She and her husband also testified that Hilton was not speeding or otherwise driving his motorcycle in an unsafe manner, the pavement was dry, and there was no fog present. In addition to Bridgette and Robert Maher, Officer Scott testified that the intersection was visible from a distance that would have allowed appellant to see and avoid Hilton's motorcycle.

{¶ 42} On consideration we find, after viewing the evidence in a light most favorable to the prosecution, that any rational trier of fact could have found the essential elements of the crime of vehicular manslaughter proven beyond a reasonable doubt. Accordingly, appellant's argument that his conviction was not supported by sufficient competent, credible evidence is without merit.

### Manifest Weight of the Evidence

{¶ 43} This court recently held that:

When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully "examine the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses, and determine whether

the [trier of fact] 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Smith*, 6th Dist. Lucas No. L-14-1119, 2015-Ohio-2676, at ¶ 11, quoting *Tibbetts*, 92 Ohio St.3d 146 at 163, 749 N.E.2d 226 (2001). (Additional citations omitted.)

{¶ 44} The decision to grant a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Dendak*, 5th Dist. Stark No. 2013 CA 00065, 2013-Ohio-5694, ¶ 16, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A conviction is not against the manifest weight of the evidence merely "because the trier of fact believed the state's version of events over the appellant's version." *State v. Parks*, 10th Dist. Franklin No. 09AP-810, 2010-Ohio-2105, ¶ 9. On appeal, we give great deference to the determination of the trial court, which was "in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." *Id.* (Citations omitted.)

{¶ 45} The transcript of appellant's trial shows that, after taking time to review the testimony, exhibits and evidence presented in this case, the trial court made the following relevant findings:

> I think it's clear from the testimony and from the fact of the accident that [appellant] did not see the motorcycle, and he entered the intersection.

20.

There was testimony from the Officer that [appellant] made a statement that, I saw something as I was in the intersection.

\* \* \*

Going to the expert testimony and the determination of speed, I suspect all of you may agree with this that the true speed [of the motorcycle] is probably somewhere in the middle. I do not believe the motorcycle was going as high as 65 or 71 miles and hour. I don't see that from the damage to the vehicles; and there is plenty of testimony going both ways.

\* \* \*

What I can say is based on all of the facts and evidence surrounding this case; in particular, Ms. Maher's testimony that she was able to see [appellant's] vehicle, I believe that based on the totality of the circumstances, the speed was not unreasonable for the conditions.

In other words, a reasonable, ordinary, prudent person in [appellant's] position would have been able to see that motorcycle and yield to the motorcycle. Because I find, therefore, that the speed of the motorcycle was not unreasonable for the conditions, I find that [appellant] is guilty beyond a reasonable doubt.

{¶ 46} After considering the entire record that was before the trial court, weighing the evidence and all reasonable inferences, and considering the trial court's determination

21.

of the credibility of witnesses as set forth above, we find that appellant's conviction was not against the manifest weight of the evidence.

{¶ 47} For the foregoing reasons, appellant's second assignment of error is not well-taken.  The judgment of the Toledo Municipal Court is hereby affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                          _____
                                                        JUDGE
Thomas J. Osowik, J.

                                           _____
James D. Jensen, .J.                                   JUDGE
CONCUR.

                                           _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.